## THE CITY OF MT. CARMEL

### v.

## LOUIS E. HOWELL, ADMINISTRATOR.

*Municipal Corporations— Negligence — Personal Injuries — Defective Streets—Proximate Cause—Evidence.*

In an action against a city for a death from cerebro-spinal meningitis claimed to have been caused by a blow in the back, received in an accident on a defective street, this court sustains a verdict for plaintiff.

[Opinion filed June 13, 1890.]

APPEAL from the Circuit Court of Wabash County; the Hon. C. C. BOGGS, Judge, presiding.

Messrs. BELL & GREEN, for appellant.

Mr. S. Z. LANDES, for appellee.

REEVES, P. J.    This was an action on the case in the Circuit Court of Wabash County, brought by appellee as administrator, against the appellant city, to recover damages for the death of

appellee's intestate, alleged to have been occasioned by the negligence of appellant in having a certain street in a dangerous condition, whereby the deceased came to her death. Declaration alleges, in substance, that defendant city permitted a dangerous excavation to remain in Market street, at the intersection of Third street, and that Florence Glick, the plaintiff's intestate, while riding in an express wagon driven by her husband, Samuel Glick, in the exercise of all proper care, was driven into the excavation and thereby injured, of which injury she afterward died; and that she left a husband and children surviving as her next of kin, and claims damages to the amount of $5,000.

Plea of general issue, not guilty, by defendant city. Trial by jury at November term, 1889, and verdict for plaintiff, assessing damages at the sum of $2,000. Motion for a new trial by defendant, and motion overruled by the court, and exceptions by defendant.

The errors assigned are as follows: First. The court admitted improper evidence for the plaintiff. Second. The court excluded proper evidence for the defendant. Third. The court gave improper and erroneous instructions for the plaintiff. Fourth. The court erred in overruling defendant's motion for a new trial. Only the third and fourth errors were discussed in appellant's brief and we shall confine ourselves to these and shall take up the fourth first, as that is the order in which they are discussed. Upon this error the case is stated thus by appellant: "The theory of appellee's case is, that an excavation made on the 29th day of September, 1888, in the north half of Third street, at its intersection with Main or Market street, was left open and unguarded; and that the deceased, who was riding in an express wagon, driven by her husband, who was in the exercise of due care, after dark, on the evening of that day, was driven into the open excavation and was thereby injured in the small of her back, of which injury she died on the 14th day of October, 1888. The *onus probandi* in this case was on the plaintiff, to establish by a preponderance of the evidence, three propositions: First, that the defendant city was guilty of negligence in permit-

ting the excavation to remain open and in a dangerous condi-
tion; second, that the deceased was driven into the excava-
tion and thereby injured, of which injury she afterward died;
and third, that she and her husband were in the exercise of
due care at the time of the injury. We have carefully read
the evidence from the record. It is not disputed that the
excavation complained of was made on the 29th day of Sep-
tember, 1888, but the city claims it was filled up before the
time Mrs. Glick was injured. Upon this point there is a
sharp conflict in the testimony, and the testimony can not be
reconciled. It was the province of the jury in this state of
case, to determine to which witnesses they would accord the
most credit. In doing this they found for the plaintiff, and
we do not feel authorized to disturb their finding. Neither
do we find any sufficient reason for setting aside the finding
of the jury that ]Mrs. Glick and her husband were in the
exercise of ordinary care at the time of the injury.

The serious question in the case is whether the injury sus-
tained by Mrs. Glick at the time of the accident, was the
cause of her death. When the spring wagon in which she was
riding was driven into the excavation, she and her husband
were thrown forward on the dashboard, and as the wagon
went against the horses it frightened them, and they made a
spring forward, and this sudden movement forward threw
Mrs. Glick back against the seat and hurt her back. At the
time she complained that her back was almost broken, and she
continued to complain of the severe hurt to her back. She
was taken home in the wagon and lingered until the 14th day
of October, when she died. It is contended that she died of
cerebro-spinal meningitis, and that the injury she received
did not produce this disease. The doctors disagreed on this
point. Dr. Manley, who attended Mrs. Glick after the injury,
says the disease of which she died was spinal meningitis, which,
in his judgment, was caused by the injury to her back. Dr.
Ross, who was examined as an expert, upon the hypothetical
case stated to him, gave it as his opinion that the cause of
death was cerebro-spinal meningitis, and that this was not
caused by the injury. Dr. Schneck, another medical expert,
upon the same hypothetical question gave it as his opinion

that she died from uræmic poisoning. He states that "the injury may have caused a dislocation of her kidneys, and in that way may have caused her death; one kidney would probably do the work for both so far as to sustain life in apparent good condition for a week or nine days, but eventually, from overwork, it would not properly eliminate from the system the matter the kidneys carry away from the blood, and the poison would in time kill the person."

Dr. Tauguary, still another medical expert, upon the same hypothetical question gave it as his opinion that she died of cerebro-spinal meningitis, and that the injury had nothing to do with it. As we understand the position of Dr. Ross, it is that an injury to the back would not produce spinal meningitis unless the injury should directly affect the spinal cord, to the extent of producing inflammation in the cord, and in such case the distinctive symptoms of meningitis would appear within twenty-four hours. Because these symptoms did not appear in Mrs. Glick's case for some eight or nine days after her injury, he concludes that the injury to the back was not the cause of the meningitis. He does not undertake to tell what was the cause in her case; in fact he thinks the cause of spinal meningitis generally is a mystery. He admits that high medical authority asserts that spinal meningitis can be produced by a stroke, by lifting, and wrenching the back, but as he had never seen such a case, he was not inclined to believe this statement. Injury to the spinal column, he says, would not likely produce inflammation of the spinal cord.

There must be inflammation of the spinal cord to produce spinal meningitis. Dr. Schneck stated, in answer to a question whether, upon the facts stated to him in the hypothetical question, it was his judgment that the spinal meningitis which produced her death was caused by the injury to her back: " If her death was from spinal meningitis it was not a direct result of the injury, but I do not believe it was spinal meningitis at all, because an injury serious enough to create inflammation of the spinal covering producing the disease, would produce it within twenty-four hours, as a rule; if it did not occur in twenty-four hours I should consider the chances against it occurring at all." We understand from this that

the spinal meningitis, if it was the cause of her death, was not directly caused by the injury to her back—that is to say, the blow upon the back did not immediately so affect the spinal cord as to set up inflammation therein—because, if it had been the result, the symptoms of spinal meningitis would have shown themselves within twenty-four hours after the injury. But we know that there are tissues about the meninges, and the outer meningis connects itself with the bone of the spinal column, and the blow may have bruised these tissues so that in the tissues there was inflammation, which might result in suppuration, and so the inflammation, after days had elapsed, be communicated to the cord itself, and then the symptoms of spinal meningitis would set in.

This, it is true, is only what might have been, but the fact remains that spinal meningitis did set in manifestly on the 8th day of October, and it came from some cause, and to us it seems much more probable that it resulted from a bruise, by the blow on the back, of some of the tissues surrounding the meninges, than that it came about from some unexplainable cause; while it might not be that, in such a case, it could be said in a medical sense that the spinal meningitis was the direct and immediate result of the blow upon the back, yet, in a legal sense, we think the blow could be said to be the cause of her death. In the discussion of the proximate and remote cause in connection with injuries out of which a cause of action is claimed to arise, many narrow and refined distinctions have been made, but the line that separates a remote and proximate cause may be stated with reasonable precision. The damages to be recovered in an action must always be the natural consequence of the wrongful act complained of. If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief or injury, the first must be considered as too remote. Schmidt v. Mitchell, 84 Ill. 195. If the spinal meningitis which it is claimed caused the death of Mrs. Glick resulted naturally as a consequence from the immediate and direct effect of the blow upon her back, the inflammation of the meninges following, and flowing from the inflammation of the tissues surrounding the meninges, the latter causing the former, then legally

City of Mt. Carmel v. Howell.

it may be said that the blow upon her back was the cause of the spinal meningitis. The fact one effect succeeds the other and causes the other, does not relieve the cause producing the first effect, from legal responsibility for the second, if it be a natural and consequent one. No new force or power in such a case intervened to produce the final result; the death would not, naturally, have resulted but for the injury. If we can see that death resulted as a natural consequence from the original injury, then the injury was the cause of the death. Even if we concede that this woman died of spinal meningitis, what probable cause is disclosed, other than the injury to her back, of the spinal meningitis? None whatever. Here was a woman between twenty-five and thirty years of age, in good health, but not robust. She received a violent injury to her back on the night of the 29th of September. She suffered intense pain in the small of her back from that time forward. Liniment prescribed by Dr. Ross was applied, also plasters; she continued to grow worse up to October 8th, when Dr. Manley was called. At this time symptoms of spinal meningitis were manifest. No cause other than the injury was suggested for the presence of the spinal meningitis. It did not come without a cause. A cause strongly probable and we think a natural one has been suggested, that traces the spinal meningitis to the injury to her back. If the tissues about the meninges were bruised by the blow, the natural, not necessary but strongly probable, result of such bruise would be inflammation and suppuration, and if that took place, the natural and almost necessary result would be inflammation of the meninges, and consequent spinal meningitis. Again, if the theory of Dr. Schneck be correct, then we think it must be conceded that the woman's death was caused by the injury she received. If the blow upon her back dislocated the kidneys, and the inevitable result of this was uræmic poison that killed the woman, certainly the injury was in a legal sense the cause of her death. We find no just cause of complaint as to the instructions given for appellee. All that were asked by appellant were given.

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*